O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUWEN ZHENG,<br><br>Petitioner,<br>v.<br><br>FERETI SEMAIA et al.,<br><br><br><br>Respondents. | Case No.: 5:26-cv-01293-MEMF-PVC<br><br>**ORDER GRANTING IN PART PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 3]** |

Before the Court is the Ex Parte Application for Temporary Restraining Order filed by Petitioner Shuwen Zheng. Dkt. No. 3 ("Application"). For the reasons stated herein, the Application is GRANTED.

/ / /

/ / /

1

I.    **Background**

    A.  **Factual Background**[1]

In or around February 2019,  Zheng entered the United States without inspection to seek asylum protection. Petition ¶ 19. Since arriving in the United States, he has consistently worked to support himself, paid taxes, and actively participated in church services and community activities. *Id.* ¶ 20. Through these efforts, Zheng has built a stable and productive life within his community, while waiting for an immigration judge to adjudicate his asylum application. *Id.*

Before being taken into ICE custody, Zheng resided in the United States for approximately six years. *Id.* ¶ 21. On or about June 16, 2025, while driving from work to home, Zheng encountered a law enforcement officer and was then taken into ICE custody. *Id.* Prior to this immigration detention, Ms. Zhang was not informed that he faced immediate detention. *Id.* ¶ 22. He was not provided an arrest warrant or advance notice of his arrest. *Id.*

On August 8, 2025, an Immigration Judge issued a final order of removal against Zheng. *Id.* ¶ 23. More than six months have elapsed since the final removal order was issued. *Id.* ¶ 24. To date, ICE has been unable to obtain the necessary documentation to effect Zheng's removal, and there remains no clear or foreseeable timeline for his removal. *Id.* Zheng has now been detained again for more than eight months. *Id.*

    B.  **Procedural History**

On March 19, 2026, Zheng filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Petition. On March 19, 2026, Zheng filed an Ex Parte Application for Temporary Restraining Order.[2] Application. On March 20, 2026, the Court ordered the Respondents to file a response to the Application by March 23, 2026, at 5pm. Dkt. No. 6. The Court's Order also

---

[1] Unless otherwise indicated, the following factual background is derived from the Zheng's Petition. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] The Court notes that it appears that Zheng did not provide notice to Respondents because "advance notice could prolong or extend" Zheng's detention. Application at 6. Federal Rule of Civil Procedure 65(b)(1)(B) requires a declaration certifying "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). It does not appear that Zheng made any attempts to give notice or detail why advance notice could prolong his detention. Given that Zheng is detained and seeking emergency relief, and in light of the fact that Respondents do not argue that the Application should be denied for failure to comply with Rule 65, the Court will address the Application in the merits.

ordered Zheng to file a Reply by March 24, 2026, at 5pm. *Id.* On March 23, 2026, Respondents filed an Opposition. Dkt. No. 9 ("Opposition"). On March 24, 2026, Zheng filed a Reply. Dkt. No. 10 ("Reply").

## II.    Applicable Law

### A.  Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B.  Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596

U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(3).

III.    **Discussion**

    **A. The Court Has Jurisdiction Over This Matter.**

Respondents argue that there is no jurisdiction to contest the government's decision to detain Zheng pursuant to 8 U.S.C. § 1252(g). Opposition at 3-4.

As this Court has explained *supra*, it lacks authority to enjoin the Government or its subdivisions to "take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA. *Aleman Gonzalez*, 596 U.S. at 550. But it may still enjoin the operation of statutory provisions as they apply to an individual noncitizen in removal proceedings. *Id.* Put another way, the Supreme Court has recognized that this Court's jurisdiction to enter individual habeas relief, where appropriate, does not improperly bear on the Government's ability to carry out immigration policy decisions.

As a general matter, in arguing this Court lacks jurisdiction, Respondents appear to inaccurately describe the question posed to this Court. They note, and then justify, that the Court is stripped of jurisdiction over challenges to the final removal order. Opposition at 4. But this case does not challenge the execution of a final removal order—the Application merely alleges that, when Respondents redetained Zheng, they did not afford him the process he was due. Application at 8-9. That inquiry is entirely independent of whether the government may execute the final removal order.

With this framework in mind, the statute that Respondents argue prevent this Court from exercising jurisdiction are inapposite.

Section 1252(g) states that no court may hear a nonimmigrant's case "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an [undocumented person]." Respondents suggest that this statute bars any District Court claims—in habeas or otherwise—that would prevent or delay the government from executing that final removal order. Opposition at 3-4. But the Supreme Court has rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims," and has instead endorsed a "much narrower" read that is confined to the "three discrete actions" listed above. *Reno*, 525 U.S. at 482. With this reading in mind, Section 1252(g) does not apply here. Neither the instant Application nor the Petition stem from (or challenge) the commencement of proceedings, adjudication of a case, or the execution of a removal order. Instead, they seek that this Court find that the *manner* in which Zheng was redetained was in violation of his constitutional and statutory

protections. Application at 8-9. Respondents cite no authority for their proposed broad reading of Section 1252(g), particularly the idea that it would prevent *any* claim that had the effect of delaying the government's execution of a final removal order. And, even if they did, this Court is not inclined to find that this argument would be relevant: Nothing in this Court's ruling today (or Zheng's requested relief) prevents Zheng's redetention or removal.

In sum, this Court concludes that it has jurisdiction to hear the habeas petition and consider the granting of injunctive relief as a preliminary matter, if appropriate.

**B.  Applying the *Winter* factors, Zheng is entitled to a temporary restraining order.**

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Zheng is entitled to a temporary restraining order.

Zheng advances two grounds upon which a temporary restraining order should be granted. First, Zheng argues that ICE unequivocally failed to provide notice or an opportunity to be heard prior to Zheng's re-detention. Application at 8-9. Second, Zheng asserts that there "remains no clear or foreseeable timeline for his removal" to China. *Id.* As such, Zheng alleges that Respondents violated 8 U.S.C. § 241.13(i)(2)-(3). *Id.*

The Court addresses these grounds below.

> i.  The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.
>
>> 1.  *There is not a significant likelihood of Zheng's removal to China in the reasonably foreseeable future.*

On his first ground, Zheng argues that Respondents have failed to establish that his removal to China is likely to occur in the reasonably foreseeable future. Application at 9. Specifically, Zheng asserts that it has been "more than six months" "since the final removal order was issued" and that "ICE has been unable to obtain the necessary documentation to effectuate his removal." *Id.* Respondents counter, stating that "ICE has obtained the necessary travel documents to effectuate [Zheng's] removal to China." Opposition at 4; Dkt. No. 9-1 ¶ 9. In response, Zheng claims that Respondents have obtained travel documents for the Republic of China (known as "Taiwan"), not the People's Republic of China (known as "PRC" or "Mainland China"). Reply at 2. Because Zheng

is a citizen of the People's Republic of China and has never been a resident or citizen of the Republic of China, Zheng states that Respondents' documents are irrelevant. *Id.*

In *Zadvydas*, the Supreme Court established that a six-month period of detention was presumptively reasonable. 533 U.S. at 701. Thus, in order to demonstrate a likelihood of success on the merits, Zheng has to indicate that there is good reason to believe that there is no likelihood of removal in the near future. *Id.* However, because Zheng is an immigrant released under an order of supervision, Section 241.13 governs codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future.*

8 U.S.C. § 241.13(a) (emphasis added).[3] This therefore indicates that the subsection Zheng relies upon—241.13(i)(2)-(3)—only applies where the noncitizen has made the showing of "good reason to believe there is no significant likelihood of removal." And this mirrors *Zadvydas*: "[a]fter [the] 6-month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Under Section 241.13(i)(2), Respondents bear the burden to establish that there is a significant likelihood that Zheng may be removed in the reasonably foreseeable future. As stated by Respondents, the Embassy of the Republic of China issued a permit for entry for Zheng on March 6, 2026, which lasts until June 5, 2026. Dkt. No. 9-1 ¶¶ 8-9. Pursuant to 28 U.S.C. § 1231(b)(2), a noncitizen shall be removed "to a country of which the [noncitizen] is a subject, national, or citizen." Zheng is not and was not a citizen or resident of the Republic of China. Reply at 2. Rather, Zheng is

---

[3] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

a citizen of the People's Republic of China. *Id.* at 2, 5-7. Since the Republic of China and the People's Republic of China operate as separate governments, travel documents procured for the former is not valid for removal to the latter. *Id.* at 2. As a result, Zheng has been detained or over six months and Respondents have not shown that the proper travel documents will be obtained in the near future. *Id.* at 2-3. Therefore, Respondents have failed to demonstrate that Zheng's removal can be effectuated in the reasonably foreseeable future.  Accordingly, this Court finds that Zheng has demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas* on this ground.

### 2. *Zheng was re-detained without notice and was not provided an opportunity to be heard.*

On this ground, Zheng argues that Respondents failed to provide adequate notice or an opportunity to be heard prior to Zheng's redetention. Application at 8-9. Respondents do not contest that they properly gave notice to Zheng prior to or on December 27, 2025, detailing the changed circumstances warranting removal. *See generally* Opposition. Respondents also do not contest that Zheng was not afforded an opportunity to be heard. *Id.* Rather, Respondents emphasize that they have obtained the requisite travel documents to effectuate Zheng's removal. But their contentions fail to address Zheng's due process rights.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Respondents do *not*, in their Opposition, claim that Zheng was: (1) provided notice of his redetention; or (2) given an opportunity to be heard prior to his redetention. *See generally* Opposition. In light of *J.G.G.*, it appears that the applicable regulations, namely 8 U.S.C. § 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will meet the due process rights of putative detainees. The Respondents provide no reason that this Court should find otherwise, and this Court declines to take the extraordinary position that these individuals are

not entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect. *See generally* Opposition. Thus, the Court holds that Respondents' admitted failure to provide Zheng notice and an opportunity to be heard constitutes an unequivocal violation of Section 241.13(i)(3).

This Court's conclusion is consistent with that of other district courts. Particularly instructive is the district court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at \*5–7. In *McSweeney*, it appears that the petitioner had received *adequate* notice, unlike Zheng; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at \*6. Still, because there was no interview opportunity following that notice, the Court found that the procedural deficiencies constituted violations of procedural due process. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

Today, the Court must determine whether Zheng is likely to eventually prevail on the merits. For the reasons described above, this Court finds that he is likely to succeed on the merits under both of his arguments for habeas relief. In sum, the first *Winter* factor is met here under Zheng's due process argument for habeas relief.

ii.   The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Zheng must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Zheng has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Zheng was redetained without notice or an opportunity to be heard and has been detained for over six months. Application at 8-9. Although

Respondents have provided evidence that Zheng's removal is likely to occur in the reasonably foreseeable future, Opposition at 4; Dkt. No. 9-1 ¶¶ 8-9, they have failed to comply with the legal process that is due to his as a detained noncitizen. *J. G. G.*, 604 U.S. at 673. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Zheng's ongoing detention without being afforded due process—which may lead to a deportation sometime in the future—inherently risks his irreparable harm.

Thus, as this Court has already found that Zheng has a sufficient likelihood of success on the merits of his due process challenge to his current detention—which is based on Zheng's constitutional rights—this Court finds the second *Winter* factor is met.

        iii.   <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a Respondents entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Zheng's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Zheng's favor. The Court agrees that the Government has a strong interest in the enforcement of federal immigration law. Opposition at 5-6. However, the Respondents have failed to comply with binding authorities, resulting in the violation of Zheng's constitutional rights against unlawful detainment. "'[I]t is clear that it would not be equitable or in the public's interest to allow the [Respondents] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Given Zheng's unlawful detention and the fact that his removal does not appear to be in the reasonably foreseeable future, the Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all

citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Accordingly, the third and fourth *Winter* factors are met here.

## IV.    Conclusion

For the foregoing reasons, the Application is GRANTED and the Court ORDERS as follows:

1.  Respondents are ORDERED to release Zheng from custody (and return to him his personal belongings) within forty-eight (48) hours,[4] and they may not redetain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;

2.  Respondents are enjoined from relocating Zheng outside of the Central District of California pending final resolution of this matter;

3.  Respondents shall not impose any release restrictions on Zheng, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.[5]

4.  The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Monday, March 30, 2026.

IT IS SO ORDERED.

Dated: March 26, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[4] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

[5] Restraints not shared by members of the public renders an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally'" and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S. 236, 238-39 (1963) (finding that the "chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions, such as electronic monitoring constitute liberty constraints which do not afford petitioners complete relief.